UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------X
QUANDELL HICKMAN,                                    :
                                                     :
                              Plaintiff,             :
                 -against-                           :       **MEMORANDUM and ORDER**
                                                     :
THE CITY OF NEW YORK, CAPTAIN                        :       20-CV-04603 (PGG) (KNF)
CHRISTIAN, AND C.O. BORDEAUS,                        :
                                                     :
                              Defendants.            :
------------------------------------------------------X
KEVIN NATHANIEL FOX
UNITED STATES MAGISTRATE JUDGE


        Plaintiff Quandell Hickman ("Hickman"), proceeding pro se and in forma pauperis,

brought this action for monetary damages and injunctive relief pursuant to 42 U.S.C. § 1983,

alleging that the defendants violated his constitutional rights, while he was incarcerated at the

Anna M. Kross Center ("AMKC") on Rikers Island.  Before the Court is Hickman's application

for the Court to appoint counsel to assist him in prosecuting this action.

                                     BACKGROUND

        Hickman alleges that on or about March 20, 2020, "numerous" inmates ran off a bus and

into the AMKC parking lot.  While he along with three other inmates were on the bus and "in

compliance," defendant Captain Christian "became irate and screamed ['o]n the ground,'" then

sprayed mace at Hickman and other inmates after they "complied."  Additionally, Hickman

alleges that "on numerous other times in Quad 15L" oleoresin capsicum spray ("OC spray") was

released, causing him to lose his breath, vomit, and lose consciousness, and "officers left [him]

in [his] cell to die!"  According to Hickman, on another occasion, his "house was mased" and a

correction officer opened his cell door, "exposing [him] to more fumes."  He again lost his breath

and vomited.  Hickman maintains that on May 17, 2020, defendant Correction Officer Bordeaus

"caus[ed a] disturbance," by "slamming and pulling doors[,] banging on doors[, and] screaming in attempts to get into [an] altercation with inmates" and released OC spray with the fan on, "causing spray to go into [his] cell."  On May 22, 2020, Bordeaus again came "into the housing area . . . slamming and pulling doors[,] banging on doors[,] and screaming to get into [an] altercation to spray!" and then "spray[ed] down the tier."  Hickman contends that as a result of these incidents, he sustained injuries including "headaches, vomit[ing], runny nose, breathing issues, unconsciousness, mental and emotional damage."  According to Hickman, "not one time did [he] get medical attention and it's COVID-19."[1]

In the instant application, Hickman explains that he has thus far been unsuccessful in his attempts to obtain counsel because "all calls go to voicemails[.] Due to COVID offices are close[d]."  Hickman contends that he needs an attorney "to help with the laws and rights of mines that has been violated[.]  I am a layperson in the matters of the law" and due to the "COVID-19 pandemic closing [the] law library."

## DISCUSSION

The pleadings of a pro se litigant, such as Hickman, are construed liberally and interpreted to raise the strongest possible arguments they suggest.  See Burgos v. Hopkins, 14 F.3d 787, 790 (2d Cir. 1994).  Included in Hickman's complaint are copies of his grievances, filed with AMKC, describing the incidents giving rise to his claims.  As a complaint is deemed to include any exhibits attached to it, see, e.g., Cortec Indus., Inc. v. Sum Holding, L.P., 949 F.2d 42, 47 (2d Cir. 1991), the Court has considered the factual allegations made in these grievances along with the allegations Hickman makes in his complaint.[2]

---

[1] Hickman does not seem to assert that he required medical attention for COVID-19, but rather that these events occurred during the COVID-19 pandemic.

[2] One grievance included with the complaint, submitted to AMKC on March 28, 2020, does not appear to concern the incidents giving rise to this litigation, but rather an unrelated incident in which "Captain Olanina #767 and

No constitutional right to counsel exists in civil cases.  See United States v. Coven, 662 F.2d 162, 176 (2d Cir. 1981).  However, "[t]he court may request an attorney to represent any person unable to afford counsel."  28 U.S.C. § 1915(e)(1).  "In deciding whether to appoint counsel, . . . the [court] should first determine whether the indigent's position seems likely to be of substance."  Hodge v. Police Officers, 802 F.2d 58, 61 (2d Cir. 1986).  This means that it appears to the court "from the face of the pleading," Stewart v. McMikens, 677 F. Supp. 226, 228 (S.D.N.Y. 1988), that the claim(s) asserted by the plaintiff "may have merit," Vargas v. City of New York, No. 97 Civ. 8426, 1999 WL 486926, at *2 (S.D.N.Y. July 9, 1999), or that the plaintiff "appears to have some chance of success. . . ."  Hodge, 802 F.2d at 60–61.

Once this threshold is met, the court then considers other criteria such as "[the] plaintiff's ability to obtain representation independently, and his ability to handle the case without assistance in the light of the required factual investigation, the complexity of the legal issues, and the need for expertly conducted cross-examination to test veracity."  Cooper v. A. Sargenti Co., 877 F.2d 170, 172 (2d Cir. 1989).

The Court understands Hickman to be asserting claims of excessive use of force and deliberate indifference to his medical needs.  The due process clause of the Fourteenth Amendment protects the rights of pretrial detainees such as Hickman to be free from conditions of detention that constitute punishment.  Bell v. Wolfish, 441 U.S. 520, 535, 99 S. Ct. 1861, 1872 (1979).  This protection encompasses a pretrial detainee's claim that he was subjected to excessive force amounting to punishment while detained and a pretrial detainee's claim that he was unconstitutionally denied medical treatment as a result of deliberate indifference to his

---

Officer Quezada #3083 serv[ed him] a ticket for a[n] incident [he] wasn't involved with and lying on ticket saying [he] refused to sign!"  The Court will not discuss the factual allegations included in this grievance here, as they do not appear to be relevant to Hickman's claims.

medical needs.  See Kingsley v. Hendrickson, 576 U.S. 389, 397, 135 S. Ct. 2466, 2473 (2015);

Charles v. Orange Cty., 925 F.3d 73, 82, (2d Cir. 2019).

*Excessive Force*

To make out a claim that officials used excessive force in violation of the Fourteenth

Amendment, a pretrial detainee must meet an "objective" standard, meaning that he "must show

only that the force purposely or knowingly used against him was objectively unreasonable."

Kingsley, 576 U.S. at 396–97.  "[O]bjective reasonableness turns on the facts and circumstances

of each particular case," considering factors such as "the relationship between the need for the

use of force and the amount of force used; the extent of the plaintiff's injury; any effort made by

the officer to temper or to limit the amount of force; the severity of the security problem at issue;

the threat reasonably perceived by the officer; and whether the plaintiff was actively resisting."

Id. at 397 (internal quotation marks and citation omitted).

Hickman alleges excessive use of force during (1) Captain Christian's March 20, 2020,

use of mace on the bus; (2) Correction Officer Bordeaus's May 17, 2020, and May 22, 2020, use

of OC spray; and (3) other instances when mace and OC were sprayed.  Reading Hickman's

complaint liberally, the first of these claims "seems likely to be of substance."  Hodge, 802 F.2d

at 61.  Hickman maintains that on March 20, 2020, defendant Captain Christian sprayed mace at

him after Hickman had returned to the bus following a disturbance and was "in compliance" with

her orders.  The Second Circuit has recognized that use of a chemical agent "constitutes a

significant degree of force" and "should not be used lightly or gratuitously" on someone who is

"complying with [] commands or otherwise poses no immediate threat."  Tracy v. Freshwater,

623 F.3d 90, 98–99 (2d Cir. 2010).  Given that Hickman maintains that Captain Christian

sprayed mace at him after the disturbance was over and any security problem had passed, when

there was no longer any need for the use of force, and that Hickman had "complied" with her

orders and was therefore not actively resisting, these allegations tend to show that Captain

Christian's use of force was objectively unreasonable.

Hickman's allegations regarding defendant Bordeaus's use of OC spray during the May

17, 2020, and May 22, 2020, incidents, however, do not appear sufficient to make out a claim for

excessive use of force.  While Hickman alleges that Bordeaus slammed and banged on doors "in

attempts to get into [an] altercation with inmates" and "just to get into [an] altercation to spray,"

he has not alleged sufficient factual detail regarding the circumstances under which the spray

was ultimately released.  He, thus, does not allege sufficient facts tending to suggest that

Bordeaus's use of force was objectively unreasonable.  He also has not alleged sufficient factual

detail tending to show that the use of force was objectively unreasonable on the other instances

when OC and mace were sprayed.

*Deliberate Indifference to Serious Medical Needs*

To make out a claim of deliberate indifference to serious medical needs, a pretrial

detainee must satisfy a two-prong standard: an "objective" prong and a "subjective" or "mental

element" prong.  Darnell v. Pineiro, 849 F.3d 17, 29 (2d Cir. 2017).  "The first prong is

objective: the alleged deprivation of adequate medical care must be sufficiently serious."  White

v. City of New York, No. 16 Civ. 6183, 2017 WL 3575700, at *3 (S.D.N.Y. Aug. 17, 2017)

(citations and quotation marks omitted).  Serious medical needs are those that may produce

"death, degeneration, or extreme pain."  Charles v. Orange Cty., 925 F.3d 73, 86 (2d Cir. 2019)

(citing Hathaway v. Coughlin, 99 F.3d 550, 553 (2d Cir. 1996).  To determine whether a medical

need is sufficiently serious, courts consider factors such as "whether a reasonable doctor or

patient would find the injury important and worthy of treatment, whether the medical condition

significantly affects an individual's daily activities, and whether the illness or injury inflicts chronic and substantial pain." Charles, 925 F.3d at 86 (citing Chance v. Armstrong, 143 F.3d 698, 702 (2d Cir. 1998)). The "mental element" prong is defined "objectively," meaning that a pretrial detainee shows that an official acted with deliberate indifference by showing that "the defendant-official acted intentionally to impose the alleged condition, or recklessly failed to act with reasonable care to mitigate the risk that the condition posed to the pretrial detainee even though the defendant-official knew, or should have known, that the condition posed an excessive risk to health or safety." Darnell, 849 F.3d at 35.

Hickman alleges that after OC spray was released in Quad 15L, he lost his breath, lost consciousness, and vomited, yet "officers left [him] in [his] cell to die!" He maintains that as a result of inhaling OC spray and mace, he sustained injuries including "headaches, vomit[ing], runny nose, breathing issues, unconsciousness, mental and emotional damage," yet "not one time did [he] get medical attention and it's COVID-19."

Hickman does not appear to have alleged a sufficiently serious medical need to satisfy the objective prong. "[T]emporary effects of chemical spray are not serious medical needs because they do not rise to the level of producing death, degeneration, or extreme pain." Holmes v. City of New York, No. 17cv3874, 2018 WL 4211311, at *7 (S.D.N.Y. Sept. 4, 2018). Hickman does not allege that any of his injuries caused him extreme pain or significantly limited his daily activities. Hickman's allegations also do not appear to satisfy the subjective prong. While Hickman alleges that "officers left [him] in [his] cell to die!," and "not one time did I get medical attention and it's COVID-19," he does not allege sufficient factual detail tending to demonstrate that the officers knew or should have known that Hickman required medical attention. He does not allege that he requested medical attention or give context that would allow the Court to infer

that the defendants should have known he was injured.  Consequently, Hickman has not shown

that his claim of deliberate indifference to his serious medical needs is likely to be of substance.

*Remaining <u>Hodge</u> Factors*

Having determined that Hickman's claim of excessive force arising from the March 20,

2020 bus incident is likely to be of substance, the Court must now consider the remaining <u>Hodge</u>

factors, including the "plaintiff's ability to obtain representation independently, and his ability to

handle the case without assistance in the light of the required factual investigation, the

complexity of the legal issues, and the need for expertly conducted cross-examination to test

veracity."  <u>Cooper</u>, 877 F.2d at 173.

In making the instant application, Hickman contends that he needs an attorney "to help

with the laws and rights of mines that has been violated[.]  I am a layperson in the matters of the

law" and due to the "COVID-19 pandemic closing [the] law library."  Hickman has made

attempts to secure counsel, but asserts that "all calls go to voicemails[.]  Due to COVID offices

are close[d]."  While Hickman does not specify how many attorneys he has tried to contact, or

whether he has tried to contact attorneys though other means such as via written letter, the Court

sees no reason to doubt that the COVID-19 pandemic has made Hickman unable to contact

attorneys and secure counsel independently.

Further, having counsel will be vital to Hickman's ability to present his case.  Given the

nature of Hickman's allegations, it is likely that credibility issues will play a large role in this

litigation.  Therefore, conflicting evidence implicating the need for cross-examination will be the

major proof presented to the fact finders at trial.  Nothing in the record before the Court indicates

that Hickman possesses this skill.  Additionally, Hickman maintains that he is a "layperson in the

matters of the law" and that he has no access to a law library due to the COVID-19 pandemic.

Accordingly, representation would "lead to a quicker and more just result by sharpening the issues and shaping examination." Hodge, 802 F.2d at 61.

Having considered the various factors outlined in Hodge, supra, the Court finds that it would be reasonable and appropriate to grant Hickman's application for appointment of counsel, Docket Entry No. 3. Therefore, the Office of Pro Se Litigation for this judicial district is directed to request pro bono counsel for the plaintiff in accordance with the applicable procedures.

**The Clerk of Court is directed to mail a copy of this Memorandum and Order to the plaintiff.**

Dated: New York, New York                                 SO ORDERED:
      November 9, 2020

                                                      _Kevin Nathaniel Fox_
                                                KEVIN NATHANIEL FOX
                                                UNITED STATES MAGISTRATE JUDGE